Yeah, we're going to proceed to the third case rather than taking a break. So the third and final case for the day, I hope I'm pronouncing this correctly, Kondrat'yev versus the City of Pensacola, it's number 17-13025. Mr. Goodrich is here for the appellants, Ms. Miller is here for the appellees. Mr. Goodrich, when you get settled, have at it. Proceed. May it please the Court, my name is Luke Goodrich, and I represent the City of Pensacola and Mayor Ashton Hayward. The City of Pensacola's actions in this case are fully consistent with the Establishment Clause, whether considered under Town of Greece, Van Orden, or Lemon. The City has acted completely neutrally toward religion, treating the Jaycees Monument no differently than any other. Plaintiffs, however, argue that the Constitution requires the City to treat this particular monument worse than any other, which would send a message of hostility toward religion and threaten scores of monuments across the country, including within this circuit. I'd like to briefly address the plaintiff's lack of standing and then turn to the merits. The plaintiff's lack of standing, why don't you just start with Rabin, right? I mean, what are we going to do with Rabin? I'd be inclined if I were you to start with Valley Forge, but Rabin comes a year after Valley Forge and call it inconsistent with Valley Forge if you want, but it's our precedent. What are we supposed to do with Rabin? I'd love to take Valley Forge and Rabin together. And Valley Forge says the psychological consequences of observing conduct you disagree with is not enough. There has to be something more. And Rabin found the something more in the fact that two of the plaintiffs were frequent campers in the national parks and said that they could no longer camp in this park because of the cross. But didn't Rabin say, just to be fair, didn't Rabin say that they were forced to relocate their camping or, in the disjunctive, have their right to use the state park conditioned upon the acceptance of unwanted religious symbolism, which it then called metaphysical or spiritual harm? And I don't understand quite why psychological harm is insufficient, but metaphysical and spiritual harm is sufficient in how I'm qualified to decide the difference between psychological and metaphysical, but such as it is. The fact of the matter was in Rabin that they incurred a cost to avoid encountering display, which is not alleged here. I would also point to this court's subsequent decision in ACLU versus Dixie County, which the plaintiffs cite in their brief. And there a plaintiff went to a courthouse to consider buying property, encountered a display and was offended, and then left. And the court said merely encountering the display was not enough for purposes of standing. So the bottom line here is that the plaintiffs haven't alleged anything more than feelings of offense, and that's not enough under Valley Forge. Even assuming the plaintiffs have standing, I'd love to turn to the merits. And under Town of Greece, the city of Pensacola's actions are fully constitutional. Town of Greece says that courts are no longer supposed to simply engage in rote application of the Lemon Test in every case, and instead the starting point is the historical practices and understandings under the Establishment Clause. In Town of Greece, the court didn't just say the founders engaged in legislative prayer, therefore all legislative prayer is constitutional. Instead, it considered history at the level of principle and identified legislative prayer as part of a broader historical phenomenon, what it called, quote, a host of traditional practices that recognize the role religion plays in our society. So let me ask you a quick question, again, now broken record time, Rabin, which not only on the standing issue but on the merits feels awfully close to this case. You know, the district court goes through the litany, right? It's like a foot taller cross. It's on public land. It's the Easter celebration. Is your contention that Van Orden and Town of Greece have sufficiently undermined Rabin that we're not bound by it? Yes, that's part of our contention, and we would say Rabin is both no longer good law, but even if it were good law, it's distinguishable. If I could address why it's no longer good law, there's two separate reasons. One is what you've identified, the fact that Rabin relied on the Lemon Test and the Supreme Court didn't consider history, and Rabin didn't consider history. So that substantially undermines Rabin. The second reason Rabin is no longer good law has to do with how Rabin applied Lemon's purpose prong. That was the sole basis for Rabin, was its purpose analysis. And after Rabin, the Supreme Court decided two very significant Lemon purpose prong cases. One was Wallace versus Jaffrey in 1985, and the other was Edwards versus Aguilard in 1987. And in both of those cases, the Supreme Court, applying Lemon's purpose prong, said that courts are bound to give, to be deferential to a state's or government's articulation of a secular purpose, and that once the state articulates a secular purpose, the burden shifts to the plaintiffs to prove that that purpose is a sham. And that's quite different from the purpose analysis in Rabin. And this court, in an en banc decision in Adler versus Duval, that's 206 F. 3rd, 1070, and again in the King decision later, which is cited in our briefs, followed the purpose analysis of Wallace versus Jaffrey and Edwards versus Aguilard, and articulated the same method of applying the purpose prong. The government has to identify a plausible secular purpose, and the burden shifts to the plaintiffs. And so if the court were to engage in that purpose analysis here, the city's actions are plainly constitutional. The city's plausible secular purpose is commemorating an important aspect of its history and culture. And the plaintiffs haven't come forward with any record evidence, legislative history and so forth, proving that that purpose is a sham. But don't the facts of the case support that the primary purpose of this was religious? The activities, primarily the activities, primarily the foundation for this, over the course of the many decades that this cross was there, I mean, don't the facts support that it was primarily religious and not primarily secular and not primarily historical, except in some very broad way? With respect, Your Honor, we would disagree, pointing out first that the purpose analysis looks to the government's purpose, not any particular private party's purpose. And so the fact that the cross was used in religious services is no different from the Ninth Circuit's decision in Weber, which was the Statue of Jesus. A private entity erected the cross to have Easter services there, to begin with, so I don't understand. We look at the government's purpose. The purpose throughout was to have Easter services there, right? That was the purpose. That was the purpose. The Jaycees did it, and then ultimately, when the wooden cross got bad, they put in a, the city paid for another cross like it, but it was for Easter services. That was the Jaycees' purpose, Your Honor. The purpose test under Lemon looks to the government's purpose. But what was the government's purpose? They haven't articulated a purpose. They paid for what the Jaycees wanted. What was the government's purpose? What is evidence in this record of the government's purpose, besides that purpose, adopting that purpose of the Jaycees? Under the purpose test, the government's purpose is commemorating an important aspect of its history and culture. And under Lemon, the question is, what's the government's purpose today? As I understand it, there's no marker on this cross. There's a plaque on the bandstand in front of the cross. The Jaycees put it up, but there's no marker of historical significance, right? Correct, Your Honor. Okay. And this is not a park where there are all the monuments around it with all kinds of different things, right? Not immediately in the immediate surroundings. Well, it's a 28-acre park. How far away, and this isn't a prominent place, where's the next monument somewhere around it? The Bonifay Memorial is roughly 200 yards away from this. And what is that? That's a monument to a young man who died in a skiing accident several decades earlier. But the purpose test looks to the government's purpose today, and King, this Court's decision in King— It doesn't seem like the government had any purpose historically. It was the Jaycees' purpose. McCreary says to focus on today, but if you do look historically, the city's purpose was to allow all sorts of groups to use the parks as they saw fit. And in this case, for example, Plaintiff Sewhart reserved and used the cross for his satanic purposes. And nobody would say that the city of Pensacola's purpose is to establish Satanism as a state religion. That's not how the purpose inquiry goes. And I'd point to several other circuits, the Ninth Circuit in Weber and the Second Circuit in American Atheists, both upheld crosses, both finding that they had a secular purpose. Even the three main circuit courts that they rely on found a secular purpose. That was American Humanists in the Fourth Circuit, Trunk in the Ninth Circuit, and Davenport— Articulate again for me the government's purpose is what? The government's purpose is to commemorate an aspect of its history and culture, which is what it does with over 170 other displays throughout its purpose. And where do I find that in the record where somebody testified to that? There's no testimony in the record to that. And under King, there was no evidence in the record of what the purpose was for adopting the Ten Commandments as part of the seal. And what the court— I don't know about King. I've just got to decide this case. So there's no evidence in the record about the purpose. No city person gave an affidavit or anything like that? Correct, Your Honor. And that's exactly like the facts in King. No city official gave an affidavit. The court said, hey, there's no evidence of why the city adopted this seal. And it said the lawyer's representation in the briefs stated the plausible secular purpose and that the court had to defer to that unless the plaintiffs brought forward evidence proving that that purpose was a sham. So let me ask you this. I mean, we've spent the last eight minutes or so talking about purpose. Is your principal contention that you can win this case under Lemon or that we've moved on with respect to this sort of monument and that Town of Greece and Van Orden, be it the plurality or Justice Breyer, require a different analysis? Our principal contention is we win under Town of Greece, but we also win under Lemon as shown by the Ninth Circuit's decision in Weber involving the statue of Jesus and by the Second Circuit's decision in American Atheists. Let me ask you one last Lemon question. Have you adequately preserved the fullness of your Lemon argument? You argued a lot about purpose in the Blue Brief, but none really about effect or entanglement except so far as I recall in a footnote on the last page of the brief. You try to sort of amplify it in the Gray Brief, but I'm not frankly sure if that's enough under our precedent to preserve the Lemon argument, the prongs two and three, which would be necessary for you to prove as well. The District Court rested its decision solely on Lemon's first prong, and so out of an abundance of caution, we addressed the second and third prongs in our opening brief in a footnote. And then when the plaintiffs have raised that as an alternative ground for affirming the District Court, we addressed it fully in our reply brief. Very well. Thank you. Thank you very much. Ms. Miller? Good morning, Your Honors, and may it please the Court. Monica Miller for the appellees. Today, I intend to discuss three key reasons why this Court should affirm the District Court's ruling and why the City's arguments are unpersuasive. The first is that the Raven County case is controlling and indistinguishable, and in that case, this Court held that the maintenance of a Christian cross in a government park for the purposes of Easter Sunrise Services, which again was the Chamber of Commerce's purpose in that case, but was inferred because the government adopted that purpose, was unconstitutional under the first prong of Lemon, notwithstanding any historical significance. So can I ask you a question right there? Sure. I mean, I actually think that that may be sort of the jumping off point for the distinction between Raven and everything that has happened since. The last paragraph of Raven basically says, we don't care about the history, forget it. And you read Van Orden and you read Town of Greece, and the Supreme Court cares passionately about history now. And so how does Raven survive the new, what I'll call Van Orden, plurality, Town of Greece historical analysis? Sure. Well, two things. One is that the Lemon prong, the Lemon purpose test, still exists, notwithstanding those two cases. They failed to show that Lemon has been overruled. But turning to Van Orden first, the history analysis that you get from that is actually from the pluralities decision, not the controlling, concurring opinion of Justice Breyer. But second of all, the Town of Greece decision is a legislative prayer case, and this Court's precedents, as well as the Supreme Court's precedents, recognize a distinction between religious displays and legislative prayer. So let me push back on that a little bit. I mean, as I read Town of Greece, the Court says in Town of Greece two things that I think you need to grapple with. One, it says Marsh, referring to the earlier legislative prayer case, must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation. The case teaches that the establishment clause must be interpreted by references to historical practices and understanding. So it seems to me that the Court in Town of Greece is saying, whatever everybody else says, this is not a legislative prayer case. This is an establishment clause case, and all establishment clause cases begin with history. Sure, Your Honor. I mean, first of all, Lemon is not actually mentioned in the Town of Greece decision. So in order to overrule Lemon, something more would be needed. But the notion that the Court would look to history as part of that analysis, and Justice Kennedy wrote that opinion. So you can look to his concurrence in the Allegheny decision, where he clarifies what his issue is. And it's really with Justice O'Connor's endorsement test. He never takes any issue with the purpose prong. But turning back to why that historical analysis that's provided in Town of Greece doesn't apply here is because the Court said, and Justice Kennedy wrote in that same couple paragraphs, that we don't need to define the precise boundary of establishment clause jurisprudence where we have evidence that the specific practice was adopted by the first Congress the same week that they had ratified the First Amendment, and where there's been an unbroken history for 200 years. And that's only the first reason why the Town of Greece, you know, analysis wouldn't apply here is because we don't have any evidence that the founders were in placing large Christian crosses on government land. But there's two other, if you looked at it as like a three-legged stool, there's two other reasons why legislative prayer can't fit within this other framework, is that one of the main rationales is that it's an internal practice for the legislature. It's intended to accommodate the spiritual needs of, you know, lawmakers as sort of citizens. And that's a theme in Town of Greece where the Court says, you know, if this was an effort to proselytize to the public, the fact we might rule a different way. But when it's actually an internal practice to accommodate the spiritual needs of lawmakers, to connect them to a time, a tradition of our founding fathers, that's acceptable. And Justice Kennedy makes this clear in the Allegheny case, in his concurrence, where he cites this Court's Raven County case as an example of what he would consider an extreme constitutional violation of the Establishment Clause. He says he had no doubt that if a city emplaced a large permanent Christian cross on its property for a year-round... Yes. To be clear, on... On Town Hall. On top of City Hall. Yes. A little different. But he goes on to say why that's the problem. And it wasn't necessarily because of the City Hall, it was because of the association with the government and what that affiliation would do when it was year-round in a display that's a secularized holiday display, you know, atheists celebrate Christmas. He was talking about something that is exclusively religious year-round. He found that to be an extreme violation. And again, he cites the Raven County case in support of that proposition. And he knows even in parentheticals that that involved a cross on a public park. So let me ask you this, because I actually think you're right, that given the fact that Kennedy writes Town of Greece that it's fair to sort of look back to Allegheny, the Allegheny concurrence, to kind of see what's going on, the legislative history of Town of Greece so to speak. So I read it differently. I mean, when I read Kennedy's concurrence, he says Marsh stands for the proposition. You were saying that, you know, Town of Greece is unique because you can trace it all the way back. And that certainly does make the specific practice at issue in Town of Greece unique. But Kennedy says Marsh, the earlier legislative prayer case, stands for the proposition not that specific practice is common in 1791 or an exception to the otherwise broad sweep of the Establishment Clause, but rather that the meaning of the clause is to be determined by reference to historical practice and understanding. Whatever test we choose to apply must permit not only legitimate practices two centuries old, but also other practices with no greater potential for an establishment of religion. A test for implementing the protections of the Establishment Clause that if applied with consistency would invalidate longstanding traditions cannot be a proper reading of the clause. And here you've got, sure, you can't trace it back. I don't think your adversaries are going to say you can trace it all the way back in the same way you can legislative prayer. But you've got some really old crosses on public land. There are several that they've pointed to that were put up on state property in before the First Amendment applied to the states. And that was a decision in 1947 where the First Amendment applied to the states. And the rationale of Greece is, again, that the very same people that wrote the First Amendment sanctioned this practice. So it's almost I don't want to say semantics, but it's almost a semantic issue with calling it an exception because we once called legislative prayer an exception. He's saying that he thinks because, again, in Allegheny, he does say I'm content for present purposes remaining in the lemon framework. And he doesn't mention lemon in the in the town of Greece case. So he's not saying we're adopting a new practice. And the lower courts, including this court's court, has been consistent in saying until the lemon test is explicitly overruled, we are bound by it. And that comes back to the Supreme Court's case in Agostini, where it says that the lower court shouldn't infer by implication that the Supreme Court has overruled its precedent. But the third. So I was talking about a three legged stool of what the town of Greece rationale applies, stands on. And it's not only the tracing back. It's not only the internal practice, but it's also the economical, inclusive nature of legislative prayer that is separate and distinct from a massive freestanding Christian cross. Weren't the prayers in the town of Greece sectarian? Weren't they invoking the name of Jesus? Yes. But what what the court says in town of Greece is that the government wasn't doing those prayers and that the government was maintaining a practice of non-discrimination and that even though they didn't have to go so far as to look outside of their their county borders or their town borders to look for non-Christian prayer grabbers, that if over time they saw a practice where where one faith was being excluded or, you know, just like this court held in Pelfrey, where one, you know, categorically excluding certain faiths would not be allowed under the legislative prayer exception, that holds true today. And that's a theme that Justice Kennedy said in discussing the rationale of Marsh, which was something about legislative prayer being a benign acknowledgment of religion, where, you know, contrast that with his example in Allegheny of a massive Christian cross on government property. Granted, it was Town Hall, but this is that was his example of an extreme violation. This is only a few degrees separate from his extreme violation. And again, he cites Raven County in support of that. So can I ask you? Oh, I'm sorry. Well, if you know, I'm interested to know about your clients and what it was specifically about the cross. They were offended, hurt. It's unclear to me what that cross actually did to them. Can you be specific about that, please? Sure. I mean, in terms of standing or just in terms of more general how it affects them on a day to day? In terms of standing? In terms of standing, absolutely. I mean, all of this court's standing precedents really recognize, broadly speaking, that being subjected to an unwelcome religious message in the context or in the course of one's interactions with the government, in this case, a public park with many amenities that the city has placed is an injury unto itself. In Glassroth, for instance, the court said that the greatest injury is the monument itself. For these plaintiffs, they're non-Christians and they're in a county or the government has put up one religious symbol. There's no other religious symbol in their public parks and it's a large Christian cross. And circling back to the purpose, the city contends that there's no evidence of the original purpose, but that's false because the 1969 Parks and Recreation Department minutes where the government expressly approved to accept this cross is evidence of that original purpose, which was for Easter sunrise services. And in Raymond County, there wasn't even that kind of concrete evidence. And when you look at the King case where the court talks about the burden shifting, it's talking about a situation when there's zero evidence of why the symbol was chosen. And so the court said in that situation, that rare situation where we have no evidence, we can shift the burden. But otherwise, the court says that the burden doesn't shift. It says, of course, this analysis applies only when there is no evidence of government intent for adopting a practice. When evidence shows that endorsement or promotion of religion was a primary purpose for the challenge practice, the inquiry ends and the practice violates the Establishment Clause. Well, in this particular situation, there's no question but that the cross is passive. The cross is not doing anything. It's not coercing anybody. It's not enforcing anything. Actually, it seems rather odd that you can be in a situation in which you have prayer at a meeting in which the room may be filled with atheists and humanists. And that clearly is something active. Now, I understand the history of all that. But we have this cross. It's just static. It's just sitting there. It's not doing anything to anybody. And so it's unclear to me what the effect is on your clients. Well, the effect is that it's telling them that they're outsiders in their own community, that they are not as welcome as, say, a Christian member of the community. And this is amplified by the fact that the city is. Well, there's nothing on this cross that says anything about anybody outside the community or anything else like that. It's just standing there. Well, for instance, the city hasn't accommodated Jewish members of the community with a symbol for Judaism. They haven't accommodated Muslims with an Islam symbol. They've accommodated. There's no indication that any of that's ever happened. In fact, this cross has been there for decades and no one has complained about it until your clients and it's been used multiple times by members of the community. Right. Two things. One is that there was a complaint 20 years ago by William Clappinger and his declaration is in the record. But second of all, the fact that the cross has stood for several decades does not evidence a secular purpose or a secular effect. In fact, the Fourth Circuit recently concluded that to the contrary, the longer a religious symbol is on government property, the greater affront to those who are excluded by it might feel. Well, I'm still trying to understand how this passive cross affected your clients. I feel like you've told me that yet. OK. It's the same way that the cross affected the clients in the Raven County case, in the King case, in the Glassroth case, where they felt that their status with respect to the government was somehow diminished. It's this it's a feeling of outsiderness that that one gets when they get the feeling that the government is promoting that one religion over theirs and the government. The fact that unlike in Raven case where there was very little government action, in this case, the city has been actively involved in maintaining the cross. It has, you know, co-sponsored or at least facilitated some of the Easter sunrise services. And so the facts here are more flagrant than those in the Raven County case. And turning back to the purpose prong, which is what we're focusing on, although the court can can move on to the other two prongs of women as well. Can I ask you one question? Sorry, before you get going down that road. So in your analysis, for instance, I guess, just sort of thinking out loud, are the headstone markers at Arlington Cemetery that are marked with Latin crosses all unconstitutional? No, Your Honor, they're not. And several circuit courts have distinguished those crosses specifically from freestanding crosses on government property. The cemetery is a multi-faith complex where the message isn't readily attributed to the government, but rather the private individuals that are buried in the cemetery. The Ninth Circuit, for instance, in Trunk distinguished the large war burial in that case from those in Arlington Cemetery. Circling back, though, to to the to the purpose inquiry and what we're looking at, McCreary actually doesn't support the notion that we look at the purpose today. It actually says that the court cannot ignore history and where there's a history that shows a clear religious purpose, i.e. for Easter sunrise services. It can't look at today's recent vermin of of what that purpose is. Well, is it the history of, in this case, the cross or is it American history in general? Well, Your Honor, no court that I'm aware of has ever looked to American history in general to support a cross display because there simply isn't any such history. There's a few scattered crosses that were above. Well, there's enormous history about America and its religious fervor over the years, especially at the founding. You can read Democracy in America by de Tocqueville. De Tocqueville takes this great length to talk about religion in America. So this is clearly a part of American history. Yes. In Glassroth, this court warned that using history, you know, the rationale that's underlying the Marsh exception to, you know, just because there were acknowledgments of God at the time of the founding cannot justify. In that case, it was a large Ten Commandments monument inside of a courthouse. And so, you know, and it said that even to read it so broadly would actually gut the core of the Establishment Clause, because if we look to the history, there were state establishments until the federal, you know, until the Establishment Clause applies to the states, the states were allowed to actually establish religion. So I think that the kind of acknowledgments at the time of the founding were those that were internally focused, economical, not promoting one religion over another, and were more broadly focused and not preferring one religion. And so the court has gone a very long way away from that, from where Massachusetts establishes congregationalism, for example. And that would be an Establishment Clause violation to Pensacola puts up a cross. And they're an enormous difference in those two in terms of the establishment of religion. Well, the idea is just that you can't necessarily apply the whole history of the United States. And I think when you go back to town of Greece, even though Justice Kennedy in the Allegheny decision says we shouldn't only, you know, we should, if there's something that's very close to this, and that's, you know, in town of Greece, they extended legislative prayer to local governments, even though they didn't have as much of a specific history. But they still say that we don't need to define the precise boundaries where there's specific history. To date, five circuit courts have addressed religious display cases since town of Greece, and all of them have adhered to the Lemon Test. That's the second, third, fourth, ninth and tenth. So if Lemon is not the test, all five of those circuits were wrong, as well as the school prayer or school religion case and unequivocally said that town of Greece only applies where there's a specific historical practice because public schools weren't around until, you know, the 1800s. The legislative prayer exception just can't apply here. But so do you agree or disagree with the statement in town of Greece, the establishment clause must be interpreted by reference to historical practices and understandings? Agree or disagree? Because this is separate from tracing it all the way back to 1791. Except if that's the bullseye, I view that as sort of the bullseye on the target. The next concentric circle is this. The establishment clause must be interpreted by reference to historical practices and understandings. Yes or no? Yes, but I wouldn't say that overrules Lemon. That wouldn't be enough for this court to abandon Lemon. And it's not a departure from the Supreme Court's jurisprudence because it's always held that actions taken by the first Congress are presumed, you know, consistent with the Bill of Rights. So it's not. I mean, I guess I'm saying, like, I get it that that town of Greece and Marsh are different in the sense that you can go back to the first Congress. But what the court seems to be saying here is and tracing it back to Kennedy's concurrence in Allegheny, even aside from the bullseye, history more generally, the stuff that Judge Royal is talking about, history and tradition more generally, that's the beginning of the establishment clause analysis in any case. I'm not reading it to say that, to be honest. I think he's still speaking in the specific context of legislative prayer. So and we're not there's no precedent that even though that might be some of the language, there's no example of one that could apply because all the case law on crosses and religious displays are to the contrary. And so I think it's partially because there's not even if it's not a specific practice, it's just doesn't fit within that framework because religious displays just weren't being put up, you know, in governments until, you know, late 1800s. Isn't that I mean, isn't that sort of the Kennedy concurrence, though? Sitting in Allegheny, I mean, that's that's not a legislative prayer case. That's a display case, a crash case. And Kennedy, I think, says they're right. He says, look, for reasons wholly apart from the establishment clause, nobody was putting up crash displays at the founding nonetheless. And then he launches into the historical analysis about sort of, you know, stuff that has happened in the interim. And a lot of what he's talking about is about Christmas, Christmas specifically, and how that's become a secularized holiday and how the display was temporary. And all of that was under the effect prong. So if anything, that chips away at the effect prong. But nothing is said about the purpose test. And I think to Justice Kennedy's point that he would probably see the Allegheny case passing the purpose prong because there was no evidence of the government in placing a religious symbol on his property to further a religious purpose. If you look at his concurrence or the opinion in Salazar, where there's some dicta about crosses, he again distinguishes the example that I in Allegheny of the cross on its property versus some veterans, some private citizens in placing a cross in a remote area of the desert where the government wasn't involved. And I think there's a distinction when the government has explicitly approved a religious symbol for religious purposes, as was the case in Rabin, as was the case in McCreary, as is the case here. Got it. Thank you so much. Thank you. Mr. Goodrich, four minutes. I'd like to briefly address history and then the purpose prong of Lemon. So Judge Newsom is correct that Justice Kennedy in Allegheny County makes clear that history applies not just to legislative prayer or practices, specific practices that the founders engaged in, but looks more generally at how how the history under the establishment clause played out. So Allegheny was a display case. Justice Kennedy didn't point to any examples of creches at the time of the founding. And yet he argued that history supported the government's practice in Allegheny. And this is also not unique to the establishment clause. The Supreme Court considers history with respect to the Second Amendment, the Fourth Amendment, many other amendments. And it never has to look back. Now, the Kilo case, the Supreme Court didn't say, well, was there heat seeking technology at the time of the founding? No. Therefore, the Fourth Amendment doesn't apply. There is a recent Second Amendment case involving stun guns. And the Massachusetts Supreme Judicial Court said there were no stun guns at the time of the founding. Therefore, the Second Amendment doesn't apply. And the Supreme Court summarily reversed because it looks at history at the level of principle, at the level of broad practices. And here, there may not have been a lot of monuments at the time of the founding.  Whether through public proclamations or through the Great Seal or through the few monuments that there were at the time of the founding, the government repeatedly acknowledged the role of religion in American life. And the city of Pensacola's actions fall well within that tradition and are therefore permissible under Town of Greece. We've also pointed, opposing counsel mentioned that there were no, no monuments at the time of incorporation of the establishment clause against the states. But we did point to an example, 1868, of a cross going on government land the very year that the establishment clause was incorporated through the 14th Amendment. Turning to the purpose test, again, the question under purpose is what is the government's purpose? And there are five circuits that have recently addressed the government purpose in the context of a cross case, a cross or a statue of Jesus. Three of those courts ended up striking down the cross, and yet all three said that the government had a permissible secular purpose. That was American Humanist, Trunk, and Davenport. So even when striking down the cross, the circuits have said the government had a secular purpose. Turning to the Weber case from the Ninth Circuit, that's a statue of Jesus with arms stretched out and blessed, standing alone on government land. And it was placed originally for religious purposes. It was used for private religious services. And yet the Ninth Circuit upheld the statue of Jesus because it said it was far from any government seat, just like this case, privately initiated, located in a recreational setting, an important part of the area's history and culture, and went unchallenged for 60 years. And we have all of those same circumstances present here. So this case is fully consistent with the Ninth Circuit's decision in Weber. Also, the Second Circuit's decision in American Atheists involving the Ground Zero Cross. That was a cross, an equally religious symbol. It was used in religious devotions at Ground Zero. It was even placed in a Catholic church for several years as an object of religious devotion. And it was recently formed. It wasn't a longstanding cross. And yet the Second Circuit unanimously upheld the government's display of that cross because it was a symbol of hope and comfort after 9-11 and part of a broader effort to commemorate history. So again, Pensacola's actions are fully consistent there. And in closing, I'd simply point out that if the Jaycees had held 75 years of annual peace vigils and wanted to erect a monument to peace in the park, nobody would have any because the Jaycees' private events had religious content and this symbol has some religious content. The plaintiffs argue that the city has to be to treat that monument worse than any other monument in its city parks. And that sends a profound message of hostility toward religion. And the Supreme Court has said time and again that the Establishment Clause doesn't require that. So the decision of the district court should be reversed. Thank you. Thank you both very much. Well argued on both sides. We'll be in recess until tomorrow morning at nine.